917 So.2d 257 (2005)
Jodhi VALLIAPPAN, Appellant,
v.
Victor Vicente CRUZ, Appellee.
No. 4D04-4678.
District Court of Appeal of Florida, Fourth District.
December 14, 2005.
*258 Robert A. Koppen of Koppen & Watkins, Partners & Associates, Delray Beach, for appellant.
Eric T. Salpeter of Zebersky & Payne, LLP, Hollywood, for appellee.
Prior report: 871 So.2d 1035.
GROSS, J.
Jodhi Valliappan appeals a final judgment rendered against him for $150,000. We affirm. In the light most favorable to the prevailing party, the evidence supports the trial court's conclusion that Valliappan conspired with his wife to defraud his friend, Victor Cruz, but does not support the claim that Cruz committed usury.
After a non-jury trial, the trial court found that Valliappan conspired with his wife, Santhy, to defraud their next-door neighbor and friend, Cruz. The Valliappans lured Cruz into making a "loan investment" of $150,000 in a business deal involving aviation parts. Under the terms of their agreement, Cruz was to receive his $150,000 back in 45 days; if the deal went through, Cruz was to receive an additional *259 $30,000. The only written verification of this agreement was a "note" to Cruz handwritten by Santhy, which said: "Short term loan investment in the amount of one hundred and fifty thousand ($150,000) Payable in 45 days."
The Valliappans did not use the $150,000 for any type of business deal; instead, they paid back other investors in other deals, paid business bills, and issued a $5,000 check to the Breakers Hotel for their daughter's wedding.
After 45 days, Santhy gave Cruz a postdated check. Knowing she had insufficient funds in the account, Santhy asked Cruz to wait to deposit the check until she returned from meeting with "her people" in Malaysia. After three months, Cruz attempted to negotiate the check, but the account on which the check was drawn had been closed.
In a one and one half page statement of facts in his initial brief, Valliappan sets out the facts in the light most favorable to himself. However, because Cruz prevailed at trial, we are required to view the trial evidence in the light most favorable to Cruz. See, e.g., New Nautical Coatings, Inc. v. Scoggin, 731 So.2d 145, 146 (Fla. 4th DCA 1999).
At trial, Valliappan raised a usury defense. On appeal, he contends that the trial court erred in denying his motion to bifurcate usury from the other issues in the case. He cites Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000), but that case is inapposite. Party Yards required the trial court to determine whether a loan contract containing an arbitration clause was usurious before requiring the borrower to submit to arbitration. Id. at 123. The fifth district reasoned that the "court's failure to first determine whether the contract was usurious could breathe life into a contract that not only violates state law, but also is criminal in nature, by use of an arbitration provision." Id. Party Yards does not involve usury as an affirmative defense, which is at issue in this case.
Florida Rule of Civil Procedure 1.270(b) governs the bifurcation of trials, and provides that "[t]he court in furtherance of convenience or to avoid prejudice may order a separate trial of any ... separate issue or of any number of claims... or issues." The decision to bifurcate is within the sound discretion of the trial court and is subject to an abuse of discretion standard of review. See, e.g., Barker v. State, 877 So.2d 59, 62 (Fla. 4th DCA 2004). The trial court did not abuse its discretion in denying the motion to bifurcate the usury issue; the facts relevant to usury were also relevant to, and intermingled with, other issues in the case, such as the nature of the parties' business deal, whether Cruz was defrauded, and whether there was a conspiracy between Valliappan and his wife. See Sall v. Luxenberg, 313 So.2d 775, 776 (Fla. 4th DCA 1975) (holding it was an abuse of discretion to separate trials where issues were "entwined and intermingled").
Next, Valliappan argues that the trial court erred in rejecting his usury defense because the "loan investment" involved an interest rate "in excess of 167%." Valliappan attempts to bring the transaction within the criminal usury statute, section 687.071(2), Florida Statutes (2004). Of significance in a civil case, section 687.071(7) provides that "[n]o extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state."
Having raised usury as an affirmative defense, Valliappan bore the burden of proof on that issue. See Phillips v. Lindsay, 102 Fla. 935, 136 So. 666, 668 (1931) (stating that "[t]he defense of usury *260 having been set up by the defendants, the burden of proof was on them to establish it"). "He who alleges usury to avoid or to defeat an obligation to pay money must establish his charge by clear and satisfactory evidence." Dixon v. Sharp, 276 So.2d 817, 820 (Fla.1973). Usury often turns on the issue of intent, which is a question of fact; therefore, "the ultimate arbiter on the issue of intent is the trial court." Jersey Palm-Gross, Inc. v. Paper, 658 So.2d 531, 534 (Fla.1995). When a trial court finds that usury has not been proved, the decision will not be reversed on appeal so long as competent and substantial record evidence supports the finding. See Donofro v. Dick, 680 So.2d 1039 (Fla. 1st DCA 1996).
The four requisites of a usurious transaction are: (1) a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) payment or agreement to pay a greater rate of interest than is allowed by law; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned. See Dixon v. Sharp, 276 So.2d at 819; see also Jersey Palm-Gross, Inc., 639 So.2d at 664, 666, app'd, 658 So.2d 531 (Fla.1995).
On two of the four elements of usury, record evidence supports the trial judge's conclusion that the transaction was not usurious.
First, Valliappan did not agree to pay a usurious rate of interest. Cruz was the Valliappans' neighbor and friend. He agreed to loan them $150,000 for 45 days to use in a business deal. After the 45 days, he was to receive $150,000 back without contingency and without interest. If the business deal went through, that is, if the Valliappans successfully purchased airplane parts and resold them in Malaysia, Cruz would receive an additional $30,000. The parties' agreement created a conditional opportunity for Cruz to share in the profits of the deal. If they realized no profits, the Valliappans were not obligated to remit anything above $150,000. "A loan agreement is not usurious when payment depends upon a contingency." Kraft v. Mason, 668 So.2d 679, 684 (Fla. 4th DCA 1996); see also Bailey v. Harrington, 462 So.2d 861 (Fla. 3d DCA 1985); Schwab v. Quitoni, 362 So.2d 297 (Fla. 3d DCA 1978).[1]
Second, Cruz did not have the corrupt intent to collect interest at a usurious rate. "[U]sury is largely a matter of intent, and is not fully determined by the fact that the lender actually receives more than law permits, but is determined by existence of a corrupt purpose in the lender's mind to get more than legal interest for the money lent." Dixon, 276 So.2d at 820. Here, Cruz was an unsophisticated lender trying to help out his friends. Santhy handwrote the terms of the loan. As found by the trial court, the agreement provided for no interest for the 45 days' use of $150,000. If the difference between *261 a lawful transaction and a usurious one is "the difference between good faith and bad faith," id. at 821, Cruz demonstrated only good faith in this transaction.
Finally, contrary to appellant's argument, we find sufficient direct and circumstantial evidence of Valliappan's participation with his wife in the conspiracy to defraud Cruz.
Affirmed.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] At some point after the postdated check was returned, Cruz's attorney demanded $180,000 under section 68.065, Florida Statutes (2004), regarding bad checks. Even if the attorney's letter were deemed to be a demand for usurious interest, and not an attempt to preserve rights under section 68.065, the demand did not transform the transaction into a usurious one. "[A]n otherwise non-usurious loan does not become usurious merely because usurious interest is claimed or demanded under it." McTigue v. Am. Sav. & Loan Ass'n of Fla., 344 So.2d 254, 255 (Fla. 4th DCA 1977). "A holding that a mere Demand for usurious interest unjustified by any contractual requirement to pay it, renders the loan usurious, would mean, for example, that an utterly baseless claim for 17% Interest upon a simple note which plainly provides for only 9% would invalidate the transaction itself. This cannot be and is not the law." Id.