EZEKIEL VUNK v. THE RARITAN RIVER RAILROAD COMPANY.

1. At common law a conveyance of land to husband and wife created a peculiar estate. During their joint lives each was seized of the entirety, and on the death of either the survivor became entitled to the whole estate. For an injury to the premises by a stranger, the husband might sue alone or husband and wife might join.

2. The effect of the Married Woman's act of 1852 upon the estate conveyed to husband and wife after that act took effect, was to endow the wife with the capacity during their joint lives to hold in her possession as a single female one-half the estate in common with her husband—the right of survivorship subsisting as at common law. For an injury to premises so held, by the destruction of trees and grass and fences by fire, the husband and wife should be joined in the suit.

3. In a suit for such injuries brought by the husband alone and issue joined without notice of the non-joinder of the wife, the cause was submitted to arbitration pursuant to the statute. *Rev.*, p. 34. The arbitrators found that (1) the defendant caused the injury complained of; (2) the owners of the property sustained damages to the amount of $462.50, and (3) the plaintiff and his wife were owners of the said property as tenants by the entirety. On an application to enter judgment on the award, and a counter-application to set aside the award,

an amendment was allowed and judgment ordered entered on the award in favor of the husband and wife, although the wife's right of action became barred by the statute of limitations pending the hearing before the arbitrators.

On motion to enter judgment on an award of arbitrators.

Argued at November Term, 1893, before Justices DEPUE, LIPPINCOTT and ABBETT.

For the plaintiff, *John S. Voorhees.*

For the defendants, *William D. Edwards.*

The opinion of the court was delivered by

DEPUE, J.     The plaintiff brought suit against the defendants in tort to recover damages for the destruction of grass, trees, timber and fences upon a tract of land situate in the township of East Brunswick, in the county of Middlesex, by means of fire communicated by sparks from a locomotive engine of the defendants, through the negligence of the defendants' servants and agents.     The declaration alleged that the plaintiff was seized and possessed of the said tract, and that the said grass, trees, timber and fences were his property. To this declaration the defendants pleaded the general issue. After issue joined the cause was, by an agreement of the parties under seal, dated April 10th, 1893, submitted to the arbitration and award of three arbitrators agreed upon and chosen for the final determination of the issue in the above cause, *pro ut* the pleadings.     By this agreement it also stipulated that the submission might, upon the application of either party, be made a rule of this court, pursuant to the first section of the act concerning arbitration.     *Rev., p.* 34.

The arbitrators having taken the oath prescribed by the statute, after hearing the parties, by an award dated May 18th, 1893, determined and certified as follows: "(1) That the said The Raritan River Railroad Company caused the injury complained of; and (2) that the owners of the property

therein have sustained damages to the amount of $462.50 ;. and (3) that Ezekiel Vunk and Catharine, his wife, are owners of said property as tenants by the entirety." The arbitrators, by their award, further certify as follows: "That the adjudication has been made upon the stipulation entered into before us by the counsel of the respective parties, that judgment shall be entered thereon upon application to the Supreme Court at the coming June Term thereof, without further notice."

Application was made at June Term by the plaintiff's counsel to have the submission to arbitration made a rule of court, and for judgment and execution thereon. This application was resisted by the counsel of the defendants, on the ground that the arbitrators by their award exceeded their powers in awarding the damages sustained by the husband and wife as the owners of the property. The plaintiff's counsel then applied to amend by making the wife a party to the suit. This application was resisted on the ground that the wife was, at the time the said award was signed, barred of her suit in virtue of the limitation contained in the second section of the act of March 25th, 1881. *Rev. Sup., p.* 824,. § 10. These applications were heard upon the papers exclusively, except that it was admitted on the argument that the premises were conveyed to the plaintiff and his wife as tenants by the entirety, but when the deed of conveyance was executed, whether before or after the Married Woman's act of 1852, nowhere appears in the papers.

By the common law, the husband, by the marriage, acquired a freehold estate in the lands of which his wife was seized in fee. This estate conferred upon the husband a right to possession and the receipt of the rents, issues and profits. For an injury to the premises by a stranger, arising from the cutting or spoiling of grass, which is a temporary profit, the husband was required to sue alone ; for the cutting or destruction of trees, which was an injury as well to the inheritance as to the possession, the husband might sue alone or husband and wife might join. *Norton* v. *Norton,* 47 *Edw. III., p.* 9, *pl.*

5 ; 1 *Com. Dig.*, *p.* 577 ; 4 *Vin. Abr.*, *tit.* "*Baron and Feme*," *X.*, *pp.* 83, 84, *pl.* 15, 20, 21 ; *Jeremy* v. *Lowgar*, *Cro. Eliz.* 461. The rule stated in *Viner's Abridgment*, *supra*, is that where nothing is to be recovered but damages, the baron alone shall have action or baron and feme may be joined, and among the illustrations given is an action for cutting trees and writ of trespass by the baron alone, where the tenure was of him and of his feme. In *Van Note* v. *Downey*, 4 *Dutcher* 219, this court held that the husband by marriage acquired a freehold estate in lands of which his wife had a life estate, and was entitled to the profits thereof during coverture, and that for a trespass committed upon the premises he might maintain an action in his own name.

By the common law a conveyance to husband and wife in fee created a peculiar estate. Under such a conveyance the husband and wife did not take separate estates; each was seized in entirety. At the death of either the entire estate devolved upon the survivor by right of survivorship. But during the coverture the interest of the wife was under the husband's control and he was entitled exclusively to the possession and to the rents and profits. *Den* v. *Hardenburgh*, 5 *Halst.* 42 ; *Den* v. *Gardner*, *Spenc.* 556, 558, 560, 562 ; *Washburn* v. *Burns*, 5 *Vroom* 18, 20 ; *Bolles* v. *State Trust Co.*, 12 *C. E. Green* 308.

These common law rules were in force in this state until July 4th, 1852, when the Married Woman's act of that year went into effect. *Rev.*, *p.* 636. If the conveyance of the premises in question was made to the plaintiff and his wife before that date, the plaintiff's estate, as husband, with all the rights incident thereto, at common law remained in him unaffected by that statute. *Van Note* v. *Downey*, 4 *Dutcher*, 219 ; *Prall* v. *Smith*, 2 *Vroom* 244. In that event the suit was properly brought in the name of the husband alone, and he was entitled to recover the whole amount of damages.

The effect of the act of 1852 upon estates conveyed to husband and wife after that act went into operation was to endow the wife with the capacity during the joint lives to hold in

her possession, as a single female, one-half the estate in common with her husband and the right of survivorship subsisting as at common law. *Buttlar* v. *Rosenblath,* 15 *Stew. Eq.* 651. In that event, for damages sustained, as the arbitrators report, by the owners of property held by husband and wife as tenants by the entirety, the wife should have been joined with her husband as a coplaintiff. The question then becomes one of parties only.

The statute confers upon the courts ample powers of amendment in order to prevent the failure of justice, and the court will exercise this power with liberality whenever justice requires it and at any stage in the proceedings, even after the case has reached the Court of Errors. *American Life Insurance Co.* v. *Day,* 10 *Vroom* 89 ; *Van Keuren* v. *McLaughlin,* 6 *C. E. Green* 379. Under this power a plaintiff may be added (*Hasbrook* v. *Winkler,* 19 *Vroom* 431) or the name of the plaintiff on the record be struck out and the name of another person be inserted as plaintiff. *Farier* v. *Schroeder,* 11 *Id.* 601. The course of practice in the courts of this state, under the statutes permitting amendments, has been that wherever the real question in controversy has been fairly tried and correctly settled upon the merits, the court will not, set aside the result for an objection that might have been avoided by amendment, but will, in such case, exercise the power of amendment. *Ware* v. *Millville Insurance Co.,* 16 *Vroom* 177 ; *Finegan* v. *Moore,* 17 *Id.* 602, 604.

By the agreement of the parties the trial of this case was submitted to a tribunal of their own choosing, and the case appears to have been determined fairly upon the merits. Where a controversy is submitted to arbitration every reasonable intendment will be made to uphold the award. The cases to this effect in our own courts are numerous and will be found cited in 1 *Stew. Dig., tit. "Arbitration."* As early as 1789 and long before the statutes which conferred the most extensive power of amendment were passed, this court allowed an amendment of the record after rule *nisi* for judgment on an award and reasons filed against the award, which were

made nugatory by the amendment. *Smith* v. *Minor, Coxe* 415. If the case had been tried before a jury it would have been competent for the trial judge to have added the plaintiff's wife as a coplaintiff, and if the result certified by the arbitrators had been contained in the verdict of the jury, this court, following the settled practice, would have directed the amendment and ordered judgment accordingly on the *postea.*

Nor will the court refuse to exercise its power of amendment in the interest of justice because of the fact that the suit of the wife has become barred by the statute of limitations. The statute of limitations is a defence that is not always received with indulgence. Courts will sometimes refuse an amendment which will permit such a plea. *West Hoboken* v. *Syms,* 20 *Vroom* 546. The statute will be no obstacle to prevent an amendment which will merely complete a cause of action which is substantially disclosed upon the pleadings. *Guild* v. *Parker's Executors,* 14 *Id.* 430. In the present case a defence of the statute of limitations would present considerations that would deprive it of all right to indulgence by the court. The injury sued for occurred May 8th, 1892. Suit was commenced in December, 1892. The case was at issue and referred to arbitrators by an agreement dated April 10th, 1893. These proceedings were all taken before the expiration of the limitation of one year prescribed by the statute. The award of the arbitrators was made May 18th, 1893, only ten days after the expiration of the limitation of one year. No notice of the non-joinder of the plaintiff's wife was given pursuant to section 37 of the Practice act. *Rev.,* *p.* 853. If such notice had been given, the amendment would have been made within the year prescribed by the statute.

Judgment may be entered on the award of the arbitrators in favor of the husband and wife, on condition that a stipulation be filed by them to release the defendants on payment of the sum awarded.